## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


CALVIN ELY,                        )
                                   )
              Plaintiff,           )
                                   )
      v.                           )        1:12CV75
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner                )
of Social Security,[1]             )
                                   )
              Defendant.           )


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Calvin Ely, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") under Title II of the Act.  (Docket Entry 1.)  The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 8, 11).  For the reasons that follow, the Court should enter judgment for Defendant.

## PROCEDURAL HISTORY

Plaintiff applied for DIB in early August 2008, alleging a disability onset date of May 1, 2005.  (Tr. 98-99, 127-39.)  Upon

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution as Defendant, pursuant to Federal Rule of Civil Procedure 25(d).

denial of the application initially (Tr. 67) and on reconsideration (Tr. 68), he requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 77-78). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing in 2010. (Tr. 37-66.) The ALJ then ruled Plaintiff not disabled under the Act. (Tr. 7-21.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision for purposes of judicial review. (Tr. 1-3.)

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2013.

2. [Plaintiff] has not engaged in substantial gainful activity since . . . the alleged onset date . . . .

3. [Plaintiff] has the following severe impairments: hypertensive heart disease and post traumatic stress disorder (PTSD) . . . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with environmental and mental restrictions.

[Plaintiff] can stand and/or walk 6 hours in an 8-hour workday; can sit 6 hours in an 8-hour workday; can lift and/or carry 10 pounds frequently and 20 pounds occasionally; requires the option to sit or stand every 60 minutes with a cane; cannot tolerate extremes of heat or cold temperature; and can occasionally interact with the public and frequently interact with co-workers and supervisors.

(Tr. 12-13.)  In light of the foregoing findings regarding residual functional capacity ("RFC"), the ALJ concluded that Plaintiff could not perform his past relevant work.  (Tr. 19.)  However, based on the VE's testimony, as well as consideration of Plaintiff's age, education, work experience, and RFC, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."  (Tr. 20 (parenthetical citation omitted).)  Accordingly, the ALJ found that Plaintiff did not suffer from a "disability," as defined in the Act, at any time from the alleged onset date through the date of decision.  (Tr. 21.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [judicial] review of [such] a decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  "The courts are not to try the case de novo."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

<u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and

that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Hall, 658 F.2d at 264. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the [RFC] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir.

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

1999).[3] A finding adverse to the claimant at any of several points along the SEP forecloses a benefits award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179. Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80.[4] However, if the claimant establishes an inability to return to prior work, the analysis

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citation omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry the "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## Assignment(s) of Error

According to Plaintiff, substantial evidence fails to support certain of the ALJ's finding(s) at step two, as well as aspects of the ALJ's formulation of Plaintiff's RFC (and thus, by implication, the ALJ's decision adverse to Plaintiff at step five), and/or the ALJ misapplied the law concerning such matters. (Docket Entry 9 at 4-6.) In those regards, Plaintiff asserts that the ALJ "did not address [Plaintiff's] cold weather injury to the left foot, extreme obesity and degenerative disc disease . . . ." (Id. at 4.) More specifically, Plaintiff complains that the ALJ "neither considered them 'severe' at Step 2, nor did he consider them during the RFC assessment . . . ." (Id.; see also id. at 6 (contending ALJ did

---

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

not properly evaluate obesity pursuant to applicable Social Security Ruling).)[6] Defendant argues otherwise and urges that substantial evidence supports the finding of no disability. (Docket Entry 12 at 6-18.) Defendant's position should prevail.

For purposes of step two, an impairment fails to qualify as "severe" if it constitutes only "a slight abnormality . . . that has no more than a <u>minimal effect</u> on the ability to do <u>basic work</u>

---

[6] To the extent Plaintiff's brief alleges error at step four (<u>see</u> Docket Entry 9 at 4, 6), it could establish no grounds for reversal or remand, because (as documented in the Procedural History section) the ALJ ruled in Plaintiff's favor at that step by concluding that he could not return to his past relevant work. In discussing obesity, Plaintiff's brief also makes passing reference to step three, but fails to develop any argument regarding any error at that step. (<u>See</u> <u>id.</u> at 6; <u>see also</u> Tr. 188-91 (setting forth Plaintiff's Hearing Memorandum identifying only Listing 12.06 (pertaining to anxiety disorders, <u>see</u> 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.06) as a listing that Plaintiff met or equaled ("based on his chronic PTSD and depressive disorders")).) As a result, Plaintiff possesses no right to relief related to step three. <u>See Burch v. Barnhart</u>, 400 F.3d 676, 682-83 (9th Cir. 2005) ("As obesity is not a separately listed impairment, a claimant will be deemed to meet the requirements if there is an impairment that, in combination with obesity, meets the requirements of a listing. Equivalence may also be determined if a claimant has multiple impairments, including obesity, none of which meets the listing requirement, but which when viewed in the aggregate are equivalent to a listed impairment. . . . Although [the plaintiff] contends that the ALJ erred in not considering obesity in determining whether she meets or equals a listing impairment, she does not specify which listing she believes she meets or equals. Further, she does not set forth any evidence which would support the diagnosis and findings of a listed impairment. . . . An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. . . . [The plaintiff] has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis. In fact, the only evidence in the record relating to her obesity are notes from doctors who observed weight gain, indicated that [she] is obese, and recommended that she participate in a medically supervised weight loss program. We therefore conclude that the ALJ did not commit reversible error by failing to consider [the plaintiff's] obesity in determining whether she met or equaled the requirements of a listed impairment." (internal citations and quotation marks omitted)); <u>see also</u> <u>Belk, Inc. v. Meyer Corp., U.S.</u>, 679 F.3d 146, 152 n.4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief."); <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); <u>Nickelson v. Astrue</u>, No. 1:07CV783, 2009 WL 2243626, at *2 n.1 (M.D.N.C. July 27, 2009) (unpublished) ("[A]s [the plaintiff] failed to develop these arguments in his [b]rief, the court will not address them.").

activities." Social Security Ruling 96-3p, <u>Policy Interpretation</u>
<u>Ruling Titles II and XVI: Considering Allegations of Pain and Other</u>
<u>Symptoms in Determining Whether a Medically Determinable Impairment</u>
<u>is Severe</u>, 1996 WL 374181, at *1 (emphasis added).   Applicable
regulations further identify "basic work activities" as:

> (1) Physical functions such as walking, standing,
> sitting, lifting, pushing, pulling, reaching, carrying,
> or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple
> instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers
> and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

Plaintiff bears the burden of proving severity at step two.
<u>Hunter</u>, 993 F.2d at 35; <u>see also</u> <u>Kirby v. Astrue</u>, 500 F.3d 705, 708
(8th Cir. 2007) ("Severity is not an onerous requirement for the
claimant to meet, but it is also not a toothless standard . . . ."
(internal citation omitted)).   To carry that burden, Plaintiff
"must provide <u>medical evidence</u> showing . . . an impairment(s) and
<u>how severe it is</u> . . . ."   20 C.F.R. § 404.1512(c) (emphasis
added); <u>see also</u> Social Security Ruling 85-28, <u>Titles II and XVI:</u>
<u>Medical Impairments that Are Not Severe</u> ("SSR 85-28"), 1985 WL
56856, at *4 ("A determination that an impairment(s) is not severe

requires a careful evaluation of the <u>medical findings</u> which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities . . . . At the second step of [the SEP], then, <u>medical evidence alone</u> is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." (emphasis added)); <u>Williamson v. Barnhart</u>, 350 F.3d 1097, 1100 (10th Cir. 2003) ("The step two severity determination is based on <u>medical factors alone</u> . . . ." (emphasis added)); <u>Washington v. Astrue</u>, 698 F. Supp. 2d 562, 579 (D.S.C. 2010) ("A severe impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. . . . A claimant's own description of her physical or mental impairments is not enough . . . . [SSR] 85-28 specifically provides that <u>medical evidence alone</u> is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." (internal quotation marks omitted) (emphasis added)); <u>Flint v. Sullivan</u>, 743 F. Supp. 777, 782 (D. Kan. 1990) ("A claimant's statements regarding the severity of an impairment are not sufficient."), <u>aff'd</u>, 951 F.2d 264 (10th Cir. 1991).

As a final matter, when (as in this case) the ALJ finds at least one severe impairment at step two, any failure to identify additional impairments as severe generally does not warrant reversal or remand because, "upon determining that a claimant has

one severe impairment, the [ALJ] must continue with the remaining steps in [the] disability evaluation." Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); accord Wells v. Colvin, 727 F.3d 1061, 1068 & n.6 (10th Cir. 2013); Arnett v. Astrue, 676 F.3d 586, 591 (7th Cir. 2012); Heatly v. Commissioner of Soc. Sec., 382 F. App'x 823, 824-25 (11th Cir. 2010); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); McLain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (unpublished) (Schroeder, J.); Prince v. Colvin, No. 5:11CV763FL, 2013 WL 1786634, at *2 (E.D.N.C. Apr. 25, 2013) (unpublished); Powell v. Astrue, 927 F. Supp. 2d 267, 274-75 (W.D.N.C. 2013); Kenney v. Astrue, Civil Action No. CBD-10-1506, 2011 WL 5025014, at *5 (D. Md. Oct. 20, 2011) (unpublished); Clark v. Commissioner of Soc. Sec., No. 2:09CV417, 2010 WL 2730622, at *11 (E.D. Va. June 3, 2010) (unpublished), recommendation adopted, 2010 WL 2731380 (E.D. Va. July 9, 2010) (unpublished); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); Washington, 698 F. Supp. 2d at 579.

Left Foot Cold Weather Injury and Degenerative Disc Disease

In applying for DIB, Plaintiff cited "back prob" and "3rd degree frost bit [sic] in L/foot" as among the "illnesses, injuries, or conditions that limit[ed] [his] ability to work." (Tr. 132.) During testimony before the ALJ, however, Plaintiff mentioned only problems with his "heart," "lower back," "knees,"

11

"hear[ing]," and "patience," when asked "why would you say that you're not able to work now?" (Tr. 45.) He further described his lower back pain as "[c]hronic" and "constant" (since an incident "in '90 . . . [or] '92, '93 [when his] parachute collapsed"),[7] but acknowledged: "[with] [t]he medication I take . . . I don't feel the pain." (Tr. 45-46.) Although Plaintiff omitted any reference to his left foot when questioned about his disabling conditions at his hearing, he later averred that, during military "cold weather training, [he] had third degree frostbite on [his] foot," which continues to cause constant numbness that at times progresses up his leg and even to his back. (Tr. 46-47; see also Tr. 749 (setting forth Plaintiff's report, during "Compensation and Pension Examination Cold Injury Protocol" at a Veterans Administration Medical Center ("VAMC"), that he suffered "frostbite to left toe . . . in cold weather training in Korea in 1995 and another time [in] 1996, [to] same toe at Fort Bragg").) Plaintiff also described related foot pain he treated with medication. (Tr. 47.)

Plaintiff's medical record (as detailed below) fully supports the ALJ's decision to opt against listing left foot cold weather injury and/or degenerative disc disease as severe impairments:

---

[7] Plaintiff reported reserve military service during 1989-91, 1996-2003, and 2005, as well as active military service during 1991-96 and 2003-05. (Tr. 148.) At his hearing, in addition to the parachute-related injury in 1990, 1992, or 1993, Plaintiff appeared to attribute his back pain to a later event "when [he] was in Korea . . . and [he] fell down the side of a mountain." (Tr. 45.) However, in connection with a "General Medical Examination" on March 31, 2006, Plaintiff "state[d] he had a bad parachute jump in 1990 at Fort Bragg, and when he reached to pick up parachute, he noted his back was hurting him. . . . The only injury was with the parachute jump in 1990." (Tr. 276 (emphasis added).)

<u>May 19, 2005</u> – Plaintiff visited a VAMC emergency room seeking treatment for a skin rash and bump on his right wrist, but "said [he] <u>feels fine otherwise</u>" (Tr. 584 (emphasis added));

<u>May 29, 2005</u> – Plaintiff underwent an examination at a VAMC, during which he (A) cited a history of "Frostbite" and "Back Injury" (Tr. 559), but (B) "denie[d] any complaints of pain in the lumbar, thoracic, or cervical regions" (Tr. 560), (C) as to his "Extremities," he "denie[d] any pain, swelling, or injury other than to his right knee" (<u>id.</u>), and (D) displayed "[f]ull range of motion (ROM) of lumbar, thoracic, and cervical regions" (Tr. 561);

<u>September 27, 2005</u> – at a scheduled VAMC appointment, Plaintiff "offer[ed] <u>no</u> complaints" and rated his "pain" as "<u>0</u>" (Tr. 527 (emphasis added));

<u>October 31, 2005</u> – at a scheduled VAMC appointment, Plaintiff described feeling "pins and needles sensation in L foot, present for over 1 year, occurred on [sic] while on active duty, had frostbite injury[,] [b]ecoming more bothersome with colder weather" (Tr. 515) and placed his "pain" at a level of "7," but noted that he was "not using any pain medications" (Tr. 516);

<u>November 9, 2005</u> – during an outpatient VAMC mental health visit, Plaintiff stated that "[h]e is also <u>on gabapentin and no longer has pain in his feet</u>" (Tr. 512 (emphasis added));

December 8, 2005 – at a scheduled VAMC appointment, Plaintiff "offer[ed] no complaints" (Tr. 509 (emphasis added)) and reported a "pain level" of "0" (Tr. 510 (emphasis added));

March 31, 2006 – during a "Cold Injury Protocol Examination" at a VAMC, regarding a claim for active-duty frost-bite damage to Plaintiff's "left great toe," as to which: A) (notwithstanding the above-referenced record of (efficacious) medical treatment in late 2005) he reported "no treatment since service," other than self-treatment of "wear[ing] two pairs of socks each night and soak[ing] his foot in warm Epsom Salts from time to time" (Tr. 273-74); and B) the examiner diagnosed only "[m]inimal peripheral neuropathy with numbness of the toe" (Tr. 275 (emphasis added));

March 31, 2006 – during a "General Medical Examination" at a VAMC, the examiner observed that Plaintiff "walk[ed] with a cane, and is slightly bent forward" (Tr. 275), but that, despite some clinical signs of pain, as well as of some limited range of motion and tenderness in his back, his "daily activities are not limited" and he had experienced "[n]o incapacitation episodes" (Tr. 276), resulting in a diagnosis of only a "low back strain" (id.);

August 29, 2006 – at a VAMC "PCP [Primary Care Physician] Follow-up Visit," Plaintiff reported "nonradiating lower back pain which occurs with running or fast walking or riding stationary bike" (Tr. 502 (emphasis added); see also Tr. 504 (claiming "pain level" for "low back" of "9")), but after an examination revealed,

14

inter alia, that he could "walk on heels and toes" (Tr. 502), the examiner prescribed only "tylenol for discomfort" (Tr. 503);

September 29, 2006 – during a routine medication review and blood pressure check in connection with attendance at a VAMC weight-loss program session, Plaintiff gauged his "pain level" as "8" attributable to "chronic, foot pain" (Tr. 498);

December 7, 2006 – at a scheduled "PCP Follow-up Visit," Plaintiff reported a "pain level" of "5" in "(L) Foot" (Tr. 495), but that he was "[n]ot taking medications regularly . . . [and was] [w]alk[ing] 3x/week" (Tr. 493; see also Tr. 494 ("OTC: Denies"));[8]

February 9, 2007 – during a "PCP Telephone Contact," Plaintiff stated that he "[h]a[d] been exercising" (Tr. 493);

April 4, 2007 – during a "Peripheral Nerve Examination" at a VAMC, Plaintiff "did not mention his left foot," "could walk on his toes and heels and jog slowly," and "could bend to put his head to the table while standing" (Tr. 761 (emphasis added));

June 27, 2007 – as part of a "Nursing Admission Assessment" related to a hospitalization for chest pain, Plaintiff displayed a "[f]ull range of motion in all extremities" and had "[n]o orthopedic equipment in use" (Tr. 211);

November 30, 2007 – at a "routine visit" to a VAMC, Plaintiff noted "intermittent throbbing pain in left foot [that] gets worse

---

[8] "OTC" commonly stands for "over-the-counter," i.e., non-prescription strength, medications. See, e.g., American Home Prods. Corp. v. Federal Trade Comm'n, 695 F.2d 681, 694 (3d Cir. 1982).

with cold weather . . . [and that he] used <u>gabapentin previously</u> which was <u>effective</u>" (Tr. 476 (emphasis added)), resulting in the prescribing of gabapentin with instructions to call if the dosage proved ineffective (Tr. 477);[9]

<u>June 4, 2008</u> – Plaintiff's "Pre-operative Assessment" for a colonoscopy at a VAMC contains:  A) a notation beside the line for "No problems noted" but not beside the line for "Pain" under the "Neurological" heading (Tr. 325); B) notations beside "edema" and "pain" as to both feet under the "Circulatory" heading (Tr. 326); and C) a notation beside "pain, History of LEFT foot" under the "Musculoskeletal" heading (Tr. 327);

<u>August 26, 2008</u> – during a "routine evaluation of chronic medical problems," Plaintiff reported "[c]hronic back and foot pain, <u>relieved with gabapentin and naprosyn</u>" (Tr. 310 (emphasis added); <u>see also</u> <u>id.</u> (documenting "no edema" in "ext"));

<u>September 2, 2008</u> – at a scheduled VAMC appointment, Plaintiff rated his "Pain level: <u>0</u>" (Tr. 306 (emphasis added));

<u>September 8, 2008</u> – during VAMC emergency room treatment for a sore throat and cough, Plaintiff exhibited "Full Range of Motion (ROM) of lumbar, thoracic, and cervical regions" (Tr. 301);

<u>September 17, 2008</u> – during a VAMC "Cardiology Consult," Plaintiff "denie[d] <u>any</u> pain, swelling or injury" in his "Extremities" (Tr. 294 (emphasis added));

---

[9] The record does not reflect that Plaintiff thereafter made any such call.

16

November 24, 2008 – a "Cold Injury Protocol Examination" report from a VAMC: A) describes Plaintiff's "cold sensitivity" as "[m]ild" (Tr. 751 (emphasis added)); B) states "No" by line for "history of decreased or lost sensations (numbness)" (id. (emphasis added)); C) documents "Gait findings: Normal" (Tr. 752 (emphasis added)); D) cites as "Reasons Given for Unemployment: States he felt a lack of energy due to other medical problems and feels incapable of physically performing work – general lethargy" (Tr. 754 (emphasis added)); and E) diagnoses "Frostbite to left great toe with residual paresthesis," but "General Occupational Effect: No Significant Effects" (id. (emphasis added));

December 22, 2008 – at a "North Carolina Department of Health and Human Services Disabiity Determination Services" evaluation: A) Plaintiff complained of "lower back pain [and] pain in . . . left foot" (Tr. 602; see also Tr. 598 (citing same at uncompleted evaluation four days earlier)); and B) examination showed a "slight limp on left . . . [with] [l]umbar spine, somewhat limited range of motion [but] [s]traight leg raise test negative" (Tr. 603-04);[10]

March 5, 2009 – Plaintiff sought treatment at a VAMC emergency room for "[b]ack and left foot pain x3 days" (Tr. 682), at which time: A) Plaintiff assessed his "Pain" at "10," but the examiner found "ROM within normal limits [and] [n]o acute distress" (id.)

_____

[10] "A straight leg-raising test is used to evaluate possible nerve root irritation." Phillips v. Barnhart, 91 F. App'x 775, 777 n.4 (3d Cir. 2004).

17

and observed that Plaintiff was "able to rise and sit and ambulate without apparent pain or difficulty" (Tr. 683); and B) Plaintiff "[s]tate[d] he is out of meds" and received a prescription (id.);

March 26, 2009 – during a scheduled VAMC appointment, Plaintiff reported "sever [sic] back pain, but state[d] he took 2 pain pills about 15 min[utes] ago" (Tr. 679), thus indicating his expectation that the recently-prescribed medication would continue to provide relief sufficient to allow normal physical activity, circumstances further confirmed by his attendance at an exercise-based weight-loss class less than three weeks later (Tr. 678-79);

April 21, 2009 – while at a VAMC for a "Podiatry Risk Assessment" related to "diabetic foot care" (Tr. 676), Plaintiff saw a "kinesiotherapist" who conducted "an evaluation for a walking cane," during which Plaintiff complained of "pain of L foot" and after which a "[w]alking cane [was] issued" (Tr. 675);[11]

October 5, 2009 – Plaintiff visited a VAMC emergency room complaining of "pain in lower back and right hip" (Tr. 821) due to his "back flar[ing] up last night" (Tr. 822), whereupon (despite Plaintiff's claimed pain of level "8" (Tr. 821) or "9" (Tr. 832)) the examiner noted only "[m]ild distress" and Plaintiff's ability to "get up and sit without problem" (Tr. 822; see also Tr. 823-24 (prescribing pain medicine); Tr. 829 ("ROM within normal limits.

_____

[11] "For purposes of establishing the existence of an impairment, a kinesiotherapist is not an acceptable medical source." Lacy v. Astrue, No. 2:10CV847SRW, 2012 WL 642122, at *4 n.5 (M.D. Ala. Feb. 28, 2012) (unpublished) (citing 20 C.F.R. § 416.913(a)).

No acute distress noted . . . . [M]oving slowly with stiff gait.
[Plaintiff] denies any other discomfort . . . .")));

October 6, 2009 – a "Radiology Report" documented that
Plaintiff's "vertebral bodies and [his] disc spaces appear within
normal limits" and that "[n]o significant degenerative changes are
seen" (Tr. 800 (emphasis added));

October 14, 2009 – at a "PCP Follow-up Visit" to Plaintiff's
emergency room treatment (which he described as having occurred
because he "[d]eveloped pain and stiffness in [his] back after
playing baseball with his son" (Tr. 817)), the examiner "instructed
[Plaintiff] on stretching exercises and weight loss [and]
encouraged [him] to ambulate without assistive device" (Tr. 818);

December 18, 2009 – a "Physical Examination" of Plaintiff at
a Fort Bragg medical facility: A) confirmed that his
"intervertebral disc spaces are maintained" (Tr. 981 (emphasis
added)); B) revealed "no evidence of acute traumatic, neoplastic,
or significant arthritic change of the lumbar spine" (id. (emphasis
added)); and C) indicated only "[m]ild degenerative disc disease of
the lower thoracic spine" (id. (emphasis added)); and

January 26, 2010 – Plaintiff underwent a "MRI Lumbar Spine
Without Contrast" that showed his "[i]ntervertebral disc spaces are
well maintained" and that he has only "[m]ild degenerative disc
disease" (Tr. 982 (emphasis added)).

In sum, the record establishes that:

1) in May 2005, shortly after his alleged disability onset date, Plaintiff twice indicated that his back and left foot felt "fine" and that they did not cause him "any" pain (Tr. 560, 584);

2) in September 2005, Plaintiff again reported "no complaints" about and "0" pain in his back and left foot (Tr. 527);

3) in October 2005, Plaintiff claimed pain in his left foot (Tr. 515-16), but acknowledged, within 10 days of starting medication, that he "no longer ha[d] pain" (Tr. 512);

4) in December 2005, Plaintiff admitted that he experienced no back or left foot problems or pain (Tr. 509-10);

5) in 2006, Plaintiff twice reported back pain (that did not impact his daily activities in the first instance (Tr. 276) and that only arose during intense exercise in the second (Tr. 502), resulting in a diagnosis of a "strain" on one occasion (Tr. 276) and treatment with "tylenol" on the other (Tr. 503), after which he made _no_ back complaints for over two years, admitted in August 2008 that medicine "relieved" his back pain, and confirmed in September 2008 that he experienced _no_ back pain and enjoyed _full_ range of motion in his back (Tr. 301, 306, 310; _see also_ Tr. 325-27, 761);

6) meanwhile, in March 2006, Plaintiff underwent an evaluation of his left foot cold weather injury (during which he failed to reveal the recent successful treatment with medicine) and received a determination that deemed the condition "minimal" (Tr. 273-75);

7) later in 2006, Plaintiff again complained of foot pain, but also acknowledged that he had not taken medication and that the pain did not impede him from walking (Tr. 493-95, 498);

8) by April 2007, any pain Plaintiff experienced from his cold weather injury had diminished to the point that he "did not mention his left foot" during a comprehensive examination (Tr. 761);

9) in November 2007, Plaintiff reported left foot pain and received a prescription (Tr. 476-77), which he later confirmed "relieved" any such pain (Tr. 310; see also Tr. 294, 306);

10) further close scrutiny of Plaintiff's cold weather injury in November 2008 documented only "Mild" sensitivity to cold and "No" numbness in his left foot, a "Normal" gait, as well as Plaintiff's admission that issues with his left foot did not contribute to his lack of employment (Tr. 751, 752, 754);

11) after over two years without back complaints, in late December 2008, at disability evaluations, Plaintiff cited low back pain (and left foot pain/numbness) as maladies (Tr. 598, 602);

12) in March and April 2009, Plaintiff claimed left foot pain again (Tr. 675, 682-83), but, by October 2009, after resuming medicine, he again verified that the pain dissipated (Tr. 829); and

13) in March 2009, Plaintiff reported recent onset of back pain and received a prescription that resolved any problem until October 2009, when he sought care for back pain that he attributed to playing baseball, whereupon both thorough evaluation and

sophisticated testing (extending into January 2010) documented his condition as "mild" (Tr. 682-83, 800, 817, 821-24, 829, 981, 982).

This analysis belies Plaintiff's assertion that "[p]ersistent numbness and pain from a residual cold injury [and] degenerative disc disease . . . are documented throughout the medical record." (Docket Entry 9 at 6 (emphasis added).) To the contrary, the medical record (as outlined above) conclusively establishes that:

1) Plaintiff (A) repeatedly denied any back problem throughout 2005, (B) only reported back pain twice in 2006 (neither under circumstances indicative of more-than-minimal or sustained impairment of work-related functioning), (C) offered no complaints about his back for more than two years until a disability evaluation in late 2008, after which (D) he claimed two flare-ups in 2009 and (E) underwent comprehensive screening, resulting in a diagnosis of only a mild condition without any finding of associated limitation of basic work activities; and

2) Plaintiff (A) complained about left foot pain once in 2005 (after denying any left foot issue multiple times earlier that year), (B) promptly reported such pain resolved by medication, (C) secured a finding of only minimal injury in 2006 (after a searching medical review), (D) claimed foot pain once late in 2006 (while not on medication and without impact on his walking program), (E) quickly recovered to the extent that, in early 2007, he did not even mention his left foot during an extensive physical evaluation,

(F) obtained a prescription to address left foot pain <u>once in late 2007</u>, (G) confirmed <u>in 2008</u> that the prescribed medicine addressed <u>any</u> left foot pain and that left foot issues did <u>not</u> cause his unemployment (at the same time a thorough work-up again validated limited, if any, symptomatology), and (H) noted foot pain <u>twice in early 2009</u>, but (upon securing medication) acknowledged relief.

Notably, Plaintiff cited no authority to support his assertion that the ALJ should have found that left foot cold weather injury and/or degenerative disc disease "have more than a minimal impact on [Plaintiff's] ability to function day to day." (<u>Id.</u>) Nor (for a number of reasons) could he. First, "the mere presence of a condition is not sufficient to make a step-two showing." <u>Williamson</u>, 350 F.3d at 1100; <u>see also</u> <u>Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [a condition], of course, says nothing about the severity of the condition."); <u>Money v. Astrue</u>, No. 5:09CV42RLV-DSC, 2009 WL 7449241, at *7 (W.D.N.C. Dec. 9, 2009) (unpublished) ("[T]he mere fact that [the] [p]laintiff was diagnosed with certain impairments [including degenerative disc disease] . . . says nothing about the severity of the impairments."), <u>recommendation adopted</u>, 2011 WL 666729 (W.D.N.C. Feb. 14, 2011) (unpublished).

Second, (as detailed above) the medical record shows that Plaintiff suffers, at most, only <u>mild</u> or <u>minimal</u> forms of left foot cold weather injury and degenerative disc disease (Tr. 275, 751-52,

800, 981, 982), but courts have recognized that mild or minimal conditions do not equate (at least as a default matter) to severe impairments, see, e.g., Leovao v. Astrue, No. 2:11CV54MR-DSC, 2012 WL 6189326, at *3 (W.D.N.C. Nov. 14, 2012) (unpublished) ("[T]he diagnosis of a mild shoulder problem does not establish a severe impairment. The fact that an MRI revealed that [the] [p]laintiff had 'mild' a.c. joint arthrosis and a 'mild' increased signal . . . compatible with tendinopathy/tendinitis did not require the ALJ to find any functional limitations." (internal citations omitted)), recommendation adopted, 2012 WL 6186824 (W.D.N.C. Dec. 12, 2012) (unpublished); Washington, 698 F. Supp. 2d at 579 (upholding step-two ruling that arthritis did not qualify as severe where doctor "described the findings as 'minimal'"); Ferrante v. Astrue, 755 F. Supp. 2d 206, 210 (D. Me. 2010) (rejecting challenge to finding of non-severity at step two where record showed "only mild degenerative disease in the lumbosacral area").

Third, "nowhere in the record is there any evidence that [Plaintiff's] failure to work . . . was caused by [these conditions]." Williamson, 350 F.3d at 1100. In fact, (as shown above) the record reflects that, after Plaintiff filed his instant DIB claim, he admitted that any left foot cold weather injury did not represent a cause of his unemployment. Although the record does not contain quite so stark an admission from Plaintiff about his back, the record also lacks medical evidence that his mild

degenerative disc disease imposed specific functional limitations. That void defeats Plaintiff's argument that the ALJ should have listed degenerative disc disease as a severe impairment. See, e.g., Kirk v. Commissioner of Soc. Sec., 177 F. App'x 205, 207 n.3 (3d Cir. 2006) ("[T]he record lacks meaningful support of [the plaintiff's] self-serving allegations of [a] debilitating [condition]. Such allegations, standing alone, are insufficient to sustain [his] burden of showing a severe impairment."); Campbell v. Astrue, No. 2:11CV563, 2013 WL 1213057, at *10 (E.D. Va. Mar. 1, 2013) (unpublished) ("[The plaintiff] bears the burden of proving that . . . [a condition] was a severe impairment. At the least, [he] was required to show not only that he had a diagnosed impairment, but also that he had associated functional limitations that prevented him from adequately performing work-related activities." (internal citation omitted)), recommendation adopted, 2013 WL 1213090 (E.D. Va. Mar. 25, 2013) (unpublished); Washington, 698 F. Supp. 2d at 579 ("[M]edical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." (internal quotation marks omitted)).

Fourth, "Plaintiff fails to acknowledge h[is] reports of pain relief with medication." Money, 2009 WL 7449241, at *7.[12] "If a

_____

[12] In particular, during testimony before the ALJ regarding his back, Plaintiff stated: "[with] [t]he medication I take . . . I don't feel the pain." (Tr. 46.) Similarly, during an examination after the filing of the instant DIB claim, Plaintiff reported "back and foot pain, relieved with gabapentin and naprosyn." (Tr. 310.) Moreover, the record (detailed above) consistently shows
(continued...)

symptom can be reasonably controlled by medication or treatment, it is not disabling." <u>Gross v. Heckler</u>, 785 F.2d 1163, 1166 (4th Cir. 1986). Consistent with that principle, courts will affirm an ALJ's finding that a condition does not qualify as severe where (as here) the record shows medicinal relief. <u>See, e.g.</u>, <u>Martise v. Astrue</u>, 641 F.3d 909, 923-24 (8th Cir. 2011) ("[The plaintiff] argues that the ALJ erred in finding that her migraine headaches were not a severe impairment . . . . Because [the plaintiff's] migraine headaches are controllable and amenable to treatment, they do not support a finding of disability." (internal quotation marks omitted)); <u>Harris v. Commissioner of Soc. Sec.</u>, No. 12-14121, 2014 WL 793612, at *9 (E.D. Mich. Feb. 27, 2014) (unpublished) (upholding step-two finding of non-severity where "the record shows the [plaintiff's] treatment was routine and her conditions were either controlled with medications or asympomatic" (internal quotation marks omitted)); <u>Barrow v. Astrue</u>, No. 2:10CV698, 2011 WL 4500846, at *5 (E.D. Cal. Sept. 27, 2011) (unpublished) ("[B]ecause the medical record confirms that [the] plaintiff's foot impairments responded to medication and treatment, the ALJ could properly find that they were not severe impairments.").

In light of all these considerations, the ALJ did not err by declining to identify left foot cold weather injury and/or

[12](...continued)
a lack of pain and/or successful treatment of pain in Plaintiff's left foot and/or back. (<u>See</u> Tr. 294, 306, 476, 510, 512, 527, 559-61, 584, 761, 829.)

degenerative disc disease as severe impairments.  Moreover, to the extent the ALJ did err in that regard, any such error does not warrant reversal or remand because, "upon determining that [Plaintiff] ha[d] [other] severe impairment[s], the [ALJ properly] continue[d] with the remaining steps," <u>Maziarz</u>, 837 F.2d at 244. Specifically, at step two, the ALJ found two severe impairments (Tr. 12) and proceeded through step five (Tr. 12-21).

Nor, once at the RFC-formulation stage of the SEP, did the ALJ misapply the law in regards to Plaintiff's left foot cold weather injury and/or degenerative disc disease.  As an initial matter, although Plaintiff claims the ALJ failed to address said conditions in devising the RFC (Docket Entry 9 at 4, 6), Plaintiff has not identified a single restriction the ALJ should have included to account for them (<u>id.</u> at 4-6).  Further, contrary to Plaintiff's contention, in developing the RFC, the ALJ gave "careful consideration to the entire record" (Tr. 13), as confirmed by the explicit discussion of and/or citation to Plaintiff's testimony and the pertinent medical evidence in the ALJ's decision (<u>see</u> Tr. 14-17).  Finally, the ALJ expressly (and adequately) dealt with Plaintiff's left foot cold weather injury and degenerative disc disease (whether classified as severe impairments or not) by restricting him to light work with added limitations of "the option to sit or stand every 60 minutes with a cane . . . [and no] extremes of . . . cold temperature[.]" (Tr. 12-13; <u>see also</u> Tr. 18

("[Plaintiff] complains of back pain, however diagnostics of the lumbar spine showed mild disease. . . . Aside from some decreased sensation, clinical examination of [Plaintiff's left great] toe was unremarkable."); Tr. 19 ("[Plaintiff] ambulates with a cane, which may be associated with toe numbness and or low back pain. However, related clinical and diagnostic examinations are not significantly compelling enough to substantiate the need for a cane. . . . Giving [Plaintiff] the benefit of the doubt, the use of a cane is included in his [RFC], as well as a sit/stand option . . . .").)[13]

Simply put, Plaintiff has shown no error in his RFC related to his left foot cold weather injury and/or degenerative disc disease. Accordingly, any alleged error at step two regarding those conditions caused Plaintiff no prejudice (and thus warrants neither reversal nor remand). See Wells, 727 F.3d at 1068 & n.6; Arnett, 676 F.3d at 591; Heatly, 382 F. App'x at 824-25; Lewis, 498 F.3d at 911; Maziarz, 837 F.2d at 244; McLain, 2014 WL 2167832, at *4; Prince, 2013 WL 1786634, at *2; Powell, 927 F. Supp. 2d at 274-75; Kenney, 2011 WL 5025014, at *5; Clark, 2010 WL 2730622, at *11; Lauver, 2010 WL 1404767, at *4; Washington, 698 F. Supp. 2d at 580.

---

[13] Indeed, the restrictions adopted by the ALJ generally cohere with Plaintiff's own reported capacity. For example, at his hearing, Plaintiff conceded he could stand continually "for about 40 minutes to about a hour." (Tr. 55.) Similarly, although Plaintiff's testimony reflected an estimated tolerance for continuous sitting of "[a]bout 40 minutes" (Tr. 56), he previously informed a medical examiner that "a sit down job would be fine" (Tr. 276). Moreover, the RFC prescribed by the ALJ provided for greater physical limits than the consulting experts had recommended based on the record. (Tr. 608-15, 708-15.)

Obesity

As with his left foot cold weather injury and degenerative disc disease, Plaintiff seeks relief on the grounds that the ALJ "neither considered [obesity] 'severe' at Step 2, nor did he consider [it] during the RFC assessment . . . ." (Docket Entry 9 at 4; see also id. at 6 (arguing that ALJ failed to address obesity adequately under applicable Social Security Ruling).) In support of that contention, Plaintiff's brief asserts that he identified "extreme obesity" as one of his "disabling impairments in his application" (id. at 4 (citing Tr. 132)); however, a review of the record page cited in Plaintiff's brief confirms that he did not (see Tr. 132 ("What are the illnesses, injuries, or conditions that limit your ability to work? cordnary [sic] heart disease, back prob, ptsd, hbp, 3rd degree frost bit [sic] in L/foot and knee, High Cholesterol, Prob with left eye, sleep apnea")).[14] Nor did Plaintiff testify at his hearing that obesity limited his ability to work (Tr. 41-62); instead, he noted that other conditions impeded employment (Tr. 45 (mentioning only issues with "heart," "lower back," "knees," "hear[ing]," and "patience," in answering "why would you say that you're not able to work now")).

---

[14] In his Hearing Memorandum, Plaintiff also omitted obesity from the list of his "Diagnoses" (Tr. 188) and from the litany of conditions "[t]he combination of [which] would prevent [him] from working at any exertional level on a regular and consistent basis" (Tr. 191), although elsewhere therein Plaintiff stated that he qualified as "obese under the [applicable Social Security Ruling]" (Tr. 190) and claimed in conclusory fashion that his "obesity in combination with his other physical impairments further impair[ed] his ability to work" (Tr. 191).

29

Those facts alone warrant denial of relief for any purported error related to obesity. See, e.g., Kushnir v. Commissioner of Soc. Sec., No. 6:13CV711ORL18DAB, 2014 WL 2860328, at *4 (M.D. Fla. June 23, 2014) (unpublished) ("The Commissioner contends that [the] [p]laintiff never alleged that her weight . . . affected her ability to work, nor did she claim her weight . . . caused any limitations in the documents she submitted with her applications. The Commissioner points out that when [the] [p]laintiff testified at the hearing, she only identified neck pain and back pain as the reasons why she could not work . . . . [I]t was not error for the ALJ to omit discussion of [the] [p]laintiff's alleged obesity where she had failed to allege it was an impairment or caused functional limitations." (internal citations omitted)); Thomas v. Colvin, Civil Action No. 1:13-1294-RMG, 2014 WL 2611720, at *1-2, 13 (D.S.C. June 11, 2014) (unpublished) (adopting recommendation that rejected argument that "ALJ erred by failing to discuss [the] [p]laintiff's obesity in the RFC analysis and failing to consider how its effects combined with [his] other impairments limited his ability to perform the function necessary to sustain gainful employment . . . [where,] [i]n his testimony, [the] [p]laintiff did not describe obesity as one of his impairments . . . [and he] did not allege obesity as an impairment in his Disability Reports"); Malin v. Astrue, No. 4:11CV1320TCM, 2012 WL 3762505, at *15 (E.D. Mo. Aug. 29, 2012) (unpublished) ("[The] [p]laintiff did not cite

obesity as a condition affecting his functioning when applying for DIB . . . or when testifying. The burden of establishing that his obesity is a severe impairment is on [the] [p]laintiff, which he failed to carry." (internal citation omitted)); Patton v. Astrue, No. 7:10CV135HL, 2012 WL 645880, at *6 (M.D. Ga. Feb. 6, 2012) (unpublished) ("[The] [p]laintiff does not allege that he is disabled due to his obesity in his application for disability benefits; rather, he stated that he was unable to work because of problems with both knees, and his elbow. Also, when questioned by the ALJ about his medical conditions at his hearing, [the] [p]laintiff stated that he could not work due to numbness in his feet, a stiff neck, numbness in his hands, deterioration of his right chest, his left triceps disappearing, and due to a tear in his shoulder. To the extent that [the] [p]laintiff is alleging the ALJ did not properly discuss [the] [p]laintiff's obesity, the ALJ did not err because [the] [p]laintiff did not allege that his obesity caused an impairment." (internal citation omitted)), recommendation adopted, 2012 WL 645852 (M.D. Ga. Feb. 28, 2012) (unpublished); see also Frederick v. Commissioner of Soc. Sec., Civil Action No. 10-11349, 2011 WL 1518966, at *9 (E.D. Mich. Mar. 25, 2011) (unpublished) ("[T]he courts frown upon 'sandbagging' administrative decisions by presenting evidence or issues for the first time upon judicial review which could have been raised before

the ALJ."), <u>recommendation adopted</u>, 2011 WL 1518913 (E.D. Mich. Apr. 20, 2011) (unpublished).

To the extent the Court opts to consider further Plaintiff's assignments of error regarding obesity, it again should find no grounds for reversal or remand. In his brief, Plaintiff rightly notes that the fact of his obesity "was clearly documented throughout the record," including at his hearing (Docket Entry 9 at 5 (discussing and citing Tr. 48, 216, 419, 505, 603-04, 675, 692));[15] however, beyond that, Plaintiff offers only the bald assertion that, in combination with his left foot cold weather injury and degenerative disc disease, his obesity "ha[d] more than a minimal impact on [his] ability to function day to day" (<u>id.</u> at 6). Despite Plaintiff's failure to identify any evidence that obesity actually caused any functional limitation(s), he nonetheless contends (without developed argument or citation of authority) that the ALJ should have listed obesity as a severe impairment at step two and "did not rectify this error . . . by considering the effects of [Plaintiff's obesity] in his RFC." (<u>Id.</u>; <u>see also</u> <u>id.</u> ("[T]he ALJ fail[ed] to correctly discuss [] Plaintiff's obesity and it's [sic] impact on his [RFC]. . . . [I]n Steps 4 and 5, obesity must be evaluated in its functional

---

[15] The citation to page 419 of the record appears in error and, instead, likely should refer to record page 418. (<u>See</u> Tr. 418, 419.) Similarly, although page 692 of the record documents Plaintiff's participation in a weight-loss program, record page 696 contains the related listing of his weight and body mass index. (<u>See</u> Tr. 692, 696.)

limitations. [The applicable Social Security Ruling] notes that obesity _may_ cause limitations in exertional and postural function . . . [and] contemplates that one's impairments _may_ be greater than without obesity." (emphasis added)).) Such an approach falls far short of establishing entitlement to relief for numerous reasons.

First, "the mere presence of a condition is not sufficient to make a step-two showing." Williamson, 350 F.3d at 1100; see also Higgs, 880 F.2d at 863 ("The mere diagnosis of [a condition], of course, says nothing about the severity of the condition."); Ricci v. Astrue, No. 5:11CV81, 2013 WL 393339, at *2 (W.D. Va. Jan. 31, 2013) (unpublished) ("[A] mere diagnosis of obesity does not mean that such condition has an impact on [one's] ability to perform work."). Second, Plaintiff has not shown "that h[is] obesity cause[d] vocationally significant limitations. That is, []he did not demonstrate that obesity significantly impact[ed] h[is] ability to perform basic work activities in excess of the limitations found by the ALJ in his decision." Spencer v. Astrue, No. 1:08CV71J, 2008 WL 5214230, at *2 (W.D. Ky. Dec. 12, 2008) (unpublished); see also Russell v. Chater, No. 94-2371, 60 F.3d 824 (table), 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished) (declining to reverse disability denial based on "argu[ment] that the ALJ gave short shrift to [the plaintiff's] obesity," where the plaintiff "speculate[d] that his obesity may have somehow aggravated his neck condition in a manner not fully considered by the ALJ, but [the

plaintiff] d[id] not fully explain the basis of this theory");
Thompson v. Colvin, No. 3:12CV399, 2013 WL 4854418, at *8 (W.D.N.C.
Sept. 11, 2013) (unpublished) (refusing to remand given "[the]
[p]laintiff's failure to set forth how her obesity further impaired
her ability to work, or to provide an explanation of how her
obesity would have impacted the ALJ's five-step analysis" (internal
quotation marks omitted)); Yurek v. Astrue, No. 5:08CV500FL, 2009
WL 2848859, at *8 (E.D.N.C. Sept. 2, 2009) (unpublished) (rejecting
attack on RFC where the plaintiff "failed to do more than suggest
that the ALJ should have speculated as to what extent obesity
. . . may have impaired [the plaintiff's] ability to work").

Third, "an individual's BMI [body mass index] level does not
correlate with any specific degree of functional loss . . . [and]
Plaintiff fails to explain why a limitation to light work [with
further restrictions added by the ALJ] d[id] not adequately account
for any limitations resulting from h[is] obesity." Barnes v.
Astrue, No. 1:11CV285MR-DSC, at *3 (W.D.N.C. Oct. 16, 2012)
(unpublished), recommendation adopted, 2012 WL 5457482 (W.D.N.C.
Nov. 8, 2012) (unpublished); see also Williams v. Astrue, No.
3:09CV103D, 2010 WL 517590, at *4 (N.D. Tex. Feb. 11, 2010)
(unpublished) ("The ALJ also limited [the plaintiff's] RFC to
'light capacity' work, which would likely be consistent with any
obesity-related limitations."). Fourth, "the ALJ's failure to
explicitly address Plaintiff's obesity was offset by the ALJ's

implied inquiry regarding [Plaintiff's] obesity.  For example,

. . . Plaintiff [testified to his] height and weight at the hearing

and the ALJ adopted physicians' records [documenting] the obesity."

Thompson, 2013 WL 4854418, at *8 (internal citations and quotation

marks omitted); see also Chavis v. Astrue, No. 5:11CV220(TJM/TWD),

2012 WL 6150851, at *6 (N.D.N.Y. Sept. 21, 2012) (unpublished)

("Since [the] [p]laintiff did not list or testify to obesity as a

disabling impairment and the medical evidence considered by the ALJ

made repeated references to [the] [p]laintiff's weight and BMI,

. . . the ALJ's failure to explicitly address [the] [p]laintiff's

obesity does not warrant remand."), recommendation adopted, 2012 WL

6139661 (N.D.N.Y. Dec. 11, 2012) (unpublished).

In sum, "[g]iven that neither the medical records nor

[Plaintiff's] testimony demonstrates that h[is] obesity result[ed]

in additional work-related limitations, it was not error for the

ALJ's opinion to omit specific discussion of obesity." McNamara v.

Astrue, 590 F.3d 607, 612 (8th Cir. 2010).  Indeed, this Court (per

United States District Judge Catherine C. Eagles) recently ruled in

the Commissioner's favor under circumstances nearly identical to

the facts of this case:

> [The plaintiff] contends that the ALJ erred at step two
> of the [SEP] by failing to find [the plaintiff's] obesity
> a severe impairment, and further failed to comply with
> [Social Security Ruling] 02-1p, Titles II and XVI:
> Evaluation of Obesity[, 2002 WL 34686281,] by not
> considering the impact of [the plaintiff's] obesity on
> his RFC. . . .

[The plaintiff] fails to meet [his] burden. The medical evidence in the record shows, at most, a diagnosis of obesity, which, standing alone, does not support a severity finding. No medical evidence of record suggests that his obesity had more than a minimal impact on his ability to perform basic work activities. . . . [The plaintiff] did not include obesity as an impairment on Disability Reports submitted to the Social Security Administration following his applications for benefits or on appeal, nor did he mention obesity when the ALJ asked him at the hearing what kinds of medical problems he had and how these problems kept him from working. Substantial evidence thus supported the ALJ's conclusion that [the] [p]laintiff's obesity failed to qualify as a severe impairment.

Further, the ALJ's failure to expressly discuss [the plaintiff's] obesity (whether classified as severe or not) in conjunction with his RFC assessment constitutes harmless error. In his arguments to the Court, [the plaintiff] does not identify any unaddressed limitations that he believes his obesity causes. As such, no basis exists for a remand. See Rutherford v. Barnhart, 399 F.3d 546, 552–53 (3d Cir. 2005) (ruling remand for express consideration of obesity unnecessary where [the] plaintiff failed to specify how her obesity would impact the ALJ's analysis); accord Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004); Miller v. Astrue, No. 2:06-00879, 2008 WL 759083, at *3 (S.D.W. Va. Mar. 19, 2008) (unpublished).

Cook v. Colvin, No. 1:11CV87, 2014 WL 317847, at *3 (M.D.N.C. Jan. 29, 2014) (unpublished) (some internal citations omitted). The Court should reach the same result here.

### CONCLUSION

Plaintiff has established no grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 8) be denied, that

Defendant's Motion for Judgment on the Pleadings (Docket Entry 11)

be granted, and that this action be dismissed with prejudice.

      /s/ L. Patrick Auld     
**L. Patrick Auld**
**United States Magistrate Judge**

July 1, 2014